ODEN ᴇᴛ ᴀʟ. *v.* BRITTAIN ᴇᴛ ᴀʟ.

Decided August 13, 1969

*Oscar W. Adams, Jr., Jack Greenberg, James M. Nabrit III,* and *Norman C. Amaker* on the application.

Mʀ. Jᴜꜱᴛɪᴄᴇ Bʟᴀᴄᴋ, Circuit Justice.

This is an application presented to me as Circuit Justice for an injunction to prevent the City of Anniston, Alabama, from holding a local election on September 2, 1969—merely a few days from now—to select five members of a newly formed city council in accordance with a state law which authorizes Anniston to change from a commission to a council-manager form of government. See City Manager Act of 1953, Ala. Code App. § 1124 *et seq.* (1958).

The applicants, all Negro citizens of Anniston, claim that the election, if held, would violate the terms of § 5 of the Voting Rights Act of 1965, 79 Stat. 439, 42 U. S. C. § 1973c (1964 ed., Supp. I), which provides that certain Southern States or political subdivisions thereof may not make any change in the procedure of elections in effect as of November 1, 1964, unless the change is either

(1) submitted to the United States Attorney General in Washington for review and he does not object, or (2) submitted to the United States District Court for the District of Columbia and that court after a hearing permits the change to be made. This procedure is of course a highly unusual departure from the basic rights of local citizens to govern their own affairs. In this case all Anniston is preparing to do is to change from a three-member commission, elected at large, to a five-member council, also elected at large.

Last Term this Court decided, over my dissent, a case which lends considerable support to the applicants' request that no election be held until officials in Washington approve it. See *Allen* v. *State Board of Elections*, 393 U. S. 544 (1969). Even were I to accept the majority's view in that case, I do not feel that decision necessarily controls the present situation which presents many material factual differences. More importantly I remain firmly convinced that the Constitution forbids this unwarranted and discriminatory intervention by the Federal Government in state and local affairs. See *South Carolina* v. *Katzenbach*, 383 U. S. 301, 355–362 (1966) (opinion of BLACK, J.).

Intervention by the federal courts in state elections has always been a serious business. Here the city has already incurred considerable expense in preparing for an election to be held within the next three weeks. If this election were held, applicants could later bring suit to have it set aside. I thus do not see why these plans should be stopped in midstream in a case in which the legal issues are unclear, when the election cannot result in the severe irreparable harm necessary to justify the issuance of the extraordinary remedy of an injunction by an individual Justice.

In addition to the foregoing factors, the three-judge panel designated to hear this case has not yet considered

the request for an injunction. While the applicants allege that the panel cannot be convened prior to the date set for the election, they have not shown that the possibilities of obtaining an immediate hearing before some three-judge court have been exhausted. There is no indication that the assistance of the Chief Judge of the Fifth Circuit, who is statutorily required by 28 U. S. C. § 2284 (1) to designate the members of the panel, has been sought. In this situation I have considerable doubt as to my authority to grant the requested relief. See Sup. Ct. Rules 18 (2), 27, and 51 (2). Therefore I decline to issue the requested injunction. Since, however, the problem is substantial and there is room for disagreement, I deny the application without prejudice to the rights of the applicants to request relief from other members of this Court. See Sup. Ct. Rule 50 (5).

*Application denied without prejudice.*